1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BALTIMORE LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>   v.<br><br>EMILY P. TORRES, et al.,<br><br>        Defendants. | Case No.  1:21-cv-01001-DAD-SAB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND GRANTING MOTION TO SERVE BY PUBLICATION PURSUANT TO 28 U.S.C. § 1655<br><br>ORDER VACATING NOVEMBER 24, 2021 HEARING<br><br>(ECF No. 13) |

## I.

## INTRODUCTION

Currently before the Court is Plaintiff's motion for leave to file an amended complaint to add the unknown heirs, devisees, successors in interest, and claimants of the estate of Joe Rodriguez Torres as parties; and Plaintiff's motion to allow service on the unknown heirs, devisees, successors in interest, and claimants of the estate of Joe Rodriguez Torres by publication pursuant to 28 U.S.C. § 1655. (ECF No. 13.) Having considered the moving papers, the declaration and exhibits attached thereto, as well as the Court's file, the Court finds this matter suitable for decision without oral argument. See E.D. Cal. L.R. 230(g). For the reasons explained herein, Plaintiff's motions shall be granted.

///

## II.

## BACKGROUND

### A.    Procedural History

The Baltimore Life Insurance Company ("Plaintiff") filed this interpleader action on June 24, 2021, naming Defendants Emily P. Torres, individually and as Trustee for the Torres Revocable Living Trust, Joe R. Torres, Jr., and Jerry R. Torres.  (ECF No. 1.)  On the same date, Plaintiff filed a notice of interested parties.  (ECF No. 2.)  On July 1, 2021, Plaintiff returned executed summons demonstrating the named Defendants had been served on June 28, 2021.  (ECF Nos. 5, 6, 7.)  On September 21, 2021, in response to the Court's order requiring a status report concerning the action, Plaintiff filed a notice of action informing the Court of the intent to file the instant motion for service by publication and amendment, and on September 22, 2021, the Court continued the scheduling conference in this matter and ordered Plaintiff to file the motion for publication and to amend within thirty days.  (ECF Nos/ 10, 11, 12.)  On October 22, 2021, Plaintiff filed the motion for service by publication and to amend that is currently before the Court.  (ECF No. 13.)

### B.    Factual Background

The Court now presents the factual background as provided in the complaint and in the moving papers.

On or around July 22, 2000, Baltimore Life issued a life insurance policy, Policy No. GT 00034181 (the "Policy")[1], payable upon the death of the insured, Joe Rodriguez Torres ("Mr. Torres").  (Pl.'s Mem. P. & A. Supp. Mot. Amend & Serve Publication ("Mem.") 2, ECF No. 13-1; Compl. ¶ 4, ECF No. 1.)  The original owner of the Policy was Washington Trust Bank with the beneficiary being a trust for the benefit of J. Torres Co., Inc., a company owned and operated by Mr. Torres and his wife, Emily Torres.  (Mem. 2; Compl. ¶ 11.)  Mr. Torres passed away on December 11, 2020.  (Mem. 2; Compl. ¶ 8.)  Pursuant to Mr. Torres' pour-over wills, the Torres Revocable Living Trust (the "Torres Trust")—of which Mr. and Mrs. Torres were

---

[1] Plaintiff notifies the Court that the Complaint mistakenly identifies the Policy as GTR 0003418, and that this was a typographical error that has been corrected in Plaintiff's proposed first amended complaint.

1  trustees—was the recipient of all Mr. Torres's assets.  (Mem. 2; Compl. ¶¶ 8-9.)

2        Prior to Mr. Torres's death, Washington Trust Bank signed documents purporting to

3  transfer the ownership and beneficiary of the Policy to Mr. and Mrs. Torres individually.  (Mem.

4  2; Compl. ¶ 12.)  However, Mr. Torres did not countersign the documents before his passing and

5  the transfer was therefore not completed.  (Id.)  As such, when Mr. Torres passed away, the

6  Policy was left without a clear owner and no beneficiary, as the trust identified as the original

7  beneficiary no longer existed.  (Mem. 2; Compl. ¶ 13.)

8        On April 12, 2021, Mrs. Torres submitted a claim for the death benefit of the Policy.

9  (Mem. 3; Compl. ¶ 10.)  Initially, Mrs. Torres and her son, Joe Torres, Jr., expressed that the

10  Policy death benefits should be transferred directly to Mrs. Torres.  (Mem. 3; Decl. Marie J.

11  Ignozzi Supp. Pl.'s Mot. ("Ignozzi Decl.") ¶ 2, ECF No. 13-3 at 1.)  It appeared that Joe Torres,

12  Jr., and Mrs. Torres were of the belief that Mr. Torres had left his assets (including the Policy

13  death benefit) to Mrs. Torres personally, and might not have been aware that Mr. Torres' wills,

14  instead, left all his assets to the Torres Trust.  (Id.)  Mrs. Torres is the sole trustee for the Torres

15  Trust since Mr. Torres passed away.  (Mem. 3; Ignozzi Decl. ¶ 4.)  Nonetheless, Joe Torres, Jr.,

16  and Mrs. Torres both then, apparently, agreed that the Policy death benefits should be transferred

17  directly to Mrs. Torres, but provided the Plaintiff with the name of their family estate attorney,

18  Robert Brumfield.  (Mem. 3; Ignozzi Decl. ¶ 3.)

19        After receiving Mrs. Torres's claim and learning of the existence of the Torres Trust,

20  Plaintiff began investigating whether there might be any other potential claimants to whom it

21  needed to provide notice.  (Mem. 3.)  Plaintiff obtained and reviewed a copy of Mr. Torres's

22  obituary, which identified the existence of additional surviving family members, including Mr.

23  and Mrs. Torres' second son, Defendant Jerry Torres.  (Mem. 3; Ignozzi Decl. ¶ 5.)  Plaintiff

24  learned that Mr. Torres was also survived by at least one brother who might seek to file a claim

25  to the death benefit, as well as other potential unknown claimants or beneficiaries of Mr.

26  Torres's estate.  (Mem. 3; Ignozzi Decl. ¶¶ 4, 5.)

27        On June 24, 2021, Plaintiff filed this interpleader action to compel all interested parties to

28  litigate and resolve their respective rights and interests with regards to the Policy's death benefit.

(Mem. 3; ECF No. 1.)  Since filing this Complaint, Plaintiff has been in contact with Robert Brumfield, counsel for Mrs. Torres and her two sons.  (Mem. 3.)  Plaintiff proffers it has worked diligently with Mr. Brumfield to attempt to discover the identity of these other potential claimants so that they can be named and served in the action.  (Id.)  Despite several discussions with Mr. Brumfield, Plaintiff proffers no party has been able to precisely identify any of the other potential claimants as of the filing of this motion.

### III.

### LEGAL STANDARD

**A.  The Rule 15 Standard for Amending Pleadings**

A party amend a pleading once as a matter of course either: "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.' "  Amerisource Bergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)(2)); see also Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (noting leave should be granted with "extreme liberality") (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir.2001)).  Leave to amend under Rule 15 is "within the sound discretion of the trial court," and "[i]n exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities."  United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).

In determining whether to grant leave to amend, a court is to consider five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint."  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).  The factors are not weighed equally.  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."  Bonin, 59 F.3d at 845.  Undue delay, "by

itself . . . is insufficient to justify denying a motion to amend." Owens, 244 F.3d at 712 (quotation marks omitted) (quoting Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999)). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." Id.

### B.    Motion to Serve By Publication Under 28 U.S.C. § 1655

"The federal interpleader statute, 28 U.S.C. § 1335, allows the filing party to remove itself from a dispute over funds owed to two or more claimants when the filing party has no interest in the outcome, other than knowing to whom payment should be made." Fid. & Guar. Life Ins. Co. v. Freeman, 94 F. Supp. 2d 689, 691 (D. Md. 2000); see also United States v. Swan's Est., 441 F.2d 1082, 1084–86 (5th Cir. 1971) ("A statutory interpleader action instituted under 28 U.S.C. 1335 is an action to determine the validity of competing claims to identified property.  If parties with claims against the property are permitted to exempt those claims from adjudication in an interpleader action by evading personal service, the basic policies underlying interpleader— permitting a stakeholder to avoid multiple liability and a multiplicity of suits— are disserved.").

28 U.S.C. § 1655[2] provides that, in an action to enforce a lien upon or claim to, or to

---

[2]  The statute, entitled "Lien enforcement; absent defendants," provides as follows:

> In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.

> Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.

> If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action. When a part of the property is within another district, but within the same state, such action may be brought in either district.

remove an encumbrance, lien, or cloud upon the title to, real or personal property, the district court may order an absent defendant to appear or plead by a certain day.  USAA Inv. Mgmt. Co. v. Dunvegan Tr. U/A 7/6/1976, No. C15-1972-JCC, 2016 WL 8504776, at *1 (W.D. Wash. Apr. 22, 2016); Metro. Life Ins. Co. v. Jackson, No. CV 17-126-BAJ-RLB, 2017 WL 4931695, at *2 (M.D. La. Oct. 31, 2017).  If personal service is not practicable, the absent defendant may be served by publication as the court may direct, not less than once a week for six consecutive weeks.  (Id.)  If the absent defendant does not appear or plead by the deadline set by the court, the court may proceed as if the defendant had been served.  (Id.)  Any adjudication as to that defendant shall affect only the subject property.  (Id.)  The statute also provides that any such defendant, at any time within one year after final judgment, may enter an appearance and set aside the judgment and permit the defendant to plead.  28 U.S.C. § 1655; see also Freeman, 94 F. Supp. 2d at 691–92 ("[N]othing in § 1655 requires appointment of a guardian ad litem, and though it may be appropriate in some cases, the Court finds no need for such appointment here. Should Freeman and Shannon wish to contest the Court's judgment once these interpleader actions are complete, they have one year after the judgment to enter their appearance, during which time the Court may set aside the judgment in the interpleader action.").

"Various federal courts have held that where an interpleader action satisfies the requirements of 28 U.S.C. § 1655, constructive service pursuant to that section will give the court jurisdiction over defendants not amenable to personal service."  Freeman, 94 F. Supp. 2d at 691–92 (citations omitted) (citing Swan's Est., 441 F.2d at 1085 ("Where, as here, the property is located within the district in which the District Court sits, the action may also fall within that class of actions defined by Section 1655. We believe that Congress did not intend to exclude from coverage under Section 1655 actions such as this one, in which the stake consists of the assets of an estate on deposit in a bank pursuant to court order, the claims are numerous, and

---

Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to plead on payment of such costs as the court deems just.

28 U.S.C. § 1655.

service by publication constitutes a reasonable mode of conveying notice to an absent party.");
Bache Halsey Stuart Shields, Inc. v. Garmaise, 519 F.Supp. 682, 686 (S.D.N.Y. 1981)); see also
USAA Inv. Mgmt. Co., 2016 WL 8504776, at *1 ("Although interpleader actions are not
specifically named in § 1655, many courts have applied the statute in such cases.") (citations
omitted); Krishna v. Colgate Palmolive Co., No. 90 CIV. 4116 (CSH), 1991 WL 125186, at *3
(S.D.N.Y. July 2, 1991) ("Relatively few courts have considered the application of § 1655 to
personal jurisdiction in interpleader actions.  However, those which have addressed that issue
have held that where the requirements of § 1655 are satisfied in an interpleader action,
constructive service of process pursuant to that section grants personal jurisdiction over
claimants not otherwise available for personal service.").

**IV.**

**DISCUSSION**

Plaintiff seeks leave to: (1) amend the Complaint to name as defendants the unknown
heirs, devisees, successors in interest, and claimants of the estate of Joe Rodriguez Torres; and
(2) to serve the newly added defendants by publication.  Since filing the Complaint, Plaintiff has
learned that there might be other familial claimants whose identities are unknown to Plaintiff,
and so brings this motion to ensure that all potential claimants have the opportunity to file any
claim to the death benefits available under the subject life insurance policy and to ensure that
Baltimore Life bears no future liability to any claimant after depositing the policy benefits with
the Court.  (Mem. 2.)

**A.     The Court shall Grant the Motion to Amend**

When considering a motion for leave to amend,  "it is the consideration of prejudice to
the opposing party that carries the greatest weight."   Eminence Capital, 316 F.3d at 1052.
"Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a
*presumption* under Rule 15(a) in favor of granting leave to amend."   Id.   The burden to
demonstrate prejudice falls upon the party opposing the amendment.   DCD Programs, Ltd. v.
Leighton, 833 F.2d 183, 187 (9th Cir. 1987).

Plaintiff proffers that amendment to add these unknown heirs, devisees, successors in

1   interest, and claimants of the estate of the estate would result in no prejudice to any of the current

2   parties to the action, and that moreover, it would ensure that any potential claimants to the policy

3   benefits have the opportunity to appear before the Court and assert any claim they may have.

4          No current Defendants have filed any opposition to this motion.  Given no opposition

5   before the Court, the Court finds that granting Plaintiff's motion to amend would not prejudice

6   the current Defendants, and it is likely in their interest to sort out all potential claimants early in

7   this litigation.  There is no evidence the motion was brought in bad faith nor does it produce

8   undue delay in the litigation.  See Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d

9   980, 986 (9th Cir. 1999) (explaining that where a motion to amend was made more than four

10  months after the cutoff date, "[a] need to reopen discovery and therefore delay the proceedings

11  supports a district court's finding of prejudice.").  Moreover, there is no reason to believe that the

12  proposed amendment is futile.  See SAES Getters S.p.A. v. Aeronex, Inc., 219 F. Supp. 2d 1081,

13  1086 (S.D. Cal. 2002) (illustrating that an amendment is futile "only if it would clearly be

14  subject to dismissal.").  Consequently, finding that none of the foregoing factors weigh against

15  granting Plaintiff leave to amend, and Plaintiff's motion is unopposed, the Court finds leave to

16  amend appropriate.  See Austin v. W. Concrete Pumping, Inc., No. 17-CV-2363-AJB-MDD,

17  2018 WL 2684140, at *1 (S.D. Cal. June 5, 2018) (granting plaintiff's motion for leave to file an

18  amended complaint after considering the motion and the defendants' non-opposition); Gonzales

19  v. F/V Daniela, No. 11cv01066 AJB (JMA), 2013 WL 444626, at *1 (S.D. Cal. Feb. 4, 2013)

20  (concluding that leave to amend was warranted in light of the defendants' non-opposition to the

21  motion and reasonable explanation for the amendment).

22          **B.      The Court shall Grant the Motion for Service by Publication**

23          Plaintiff argues the requirements for service by publication pursuant to 28 U.S.C. § 1655

24  are met because the action involves "property within the district," and personal service is "not

25  practicable." (Mot. 5.)  Plaintiff proffers it is in the process of preparing to deposit the proceeds

26  from Mr. Torres' policy with the Court, (Mem. 5 n.3.), and submits the proceeds of the life

27  insurance policy will become property within the district upon deposit with the Court.  See

28  Wright, Miller & Kane, Federal Practice and Procedure: § 1711 Personal Jurisdiction and

1   Process, 7 Fed. Prac. & Proc. Civ. § 1711 (3d ed.) ("[O]nce a stake is deposited with the court,

2   28 Section 1655 seems to apply regardless of the property's character.").

3       Plaintiff proffers that personal service upon the unknown heirs, devisees, successors in

4   interest, and claimants of the estate is not practicable because their precise identities are

5   unknown to Plaintiff.  (Mem. 5.)  Plaintiff submits that it first became aware of the existence of

6   potential other claimants when it learned that the Torres Trust had a claim to the Policy's death

7   benefit by operation of Mr. Torres' pour-over wills.  (Id.)  Plaintiff then diligently investigated

8   the identifies and locations of other potential claimants.  (Id.)  Through subsequent discussions

9   with claimants and counsel, Plaintiff learned of the existence of another son and brother (name

10  unknown) of Mr. Torres.  (Id.)  While Plaintiff has thus far personally named every interested

11  party in the complaint that it has been able to identify, Plaintiff's discussions with claimants and

12  counsel has given it reason to believe there may be other potential claimants whose precise

13  identities are unknown.  (Id.)

14      As it is unable to determine the precise identify of these unknown claimants despite its

15  due diligence, Plaintiff requests an order directing these unknown heirs, devisees, successors in

16  interest, and claimants of the estate of Joe Rodriguez Torres to appear or plead in response to the

17  Complaint, on or before a date certain, with the order to be published both in a newspaper of

18  national circulation, such as USA Today, and a newspaper of general circulation within Kern

19  County, such as the Bakersfield Californian, by Plaintiff once a week for six consecutive weeks.

20  In addition to the published cases cited by Plaintiff, Plaintiff has also attached an order from the

21  docket of the Western District of Washington where in the plaintiff's motion for service by

22  publication was granted, and the complaint was allowed to be amended to name unknown heirs,

23  devisees, claimants, and successors in interest to the estate as defendants and to serve them

24  through publication, so as to give every potential claimant the opportunity to bring their claim

25  before the death benefits of a life insurance policy were distributed.   See Order Granting

26  Primerica's Motion for Leave to Amend the Complaint, Suspend Deadlines, and Allow Service

27  by Publication, Primerica Life Ins. Co. v. Estate of Kennedy, No. 3:07-cv-05054 (May 29, 2007),

28  ECF No. 23-2.

1    There was no opposition filed to this motion, however, given the motion involves absent

2    to-be-named Defendants, the Court must determine whether service on the unknown individuals

3    is impracticable.  See USAA Inv. Mgmt. Co., 2016 WL 8504776, at *2 ("The Court is mindful,

4    however, that this motion involves an absent defendant, giving the defendant's failure to respond

5    less weight.  Thus, the Court must determine whether service on the 1976 Trust is truly

6    impracticable.").  Based on the Court's review of the moving papers, counsel's declaration and

7    the exhibits attached thereto, and the above legal authority, the Court finds Plaintiff has

8    adequately demonstrated diligence in attempting to identify and locate the unknown heirs,

9    devisees, successors in interest, and claimants of the estate.  Finding good cause and sufficient

10   demonstration by Plaintiff of the impracticability of completing service on these individuals, the

11   Court shall grant Plaintiff's motion to serve by publication pursuant to 28 U.S.C. § 1655.  See

12   Swan's Est., 441 F.2d 1082, 1088 n.2 ("Where personal service is not practicable, the order shall

13   be published as the court may direct, not less than once a week for six consecutive weeks.")

14   (quoting 28 U.S.C. § 1655); USAA Inv. Mgmt. Co., 2016 WL 8504776 ("the Court agrees that

15   personal service on the 1976 Trust would be impracticable, if not impossible.  Accordingly,

16   service by publication is the only way to ensure that the 1976 Trust receives notice of the instant

17   interpleader action."); Metro. Life Ins. Co., 2017 WL 4931695, at *2

**V.**

**ORDER**

20   Based on the foregoing, IT IS HEREBY ORDERED that:

21   1.    Plaintiff's motion for leave to file a first amended complaint is GRANTED;

22   2.    Plaintiff's motion to serve by publication pursuant to 28 U.S.C. § 1655 is

23         GRANTED;

24   3.    Plaintiff is granted leave to serve and file an amended complaint adding the

25         unknown heirs, devisees, successors in interest, and claimants of the estate of Joe

26         Rodriguez Torres;

27   4.    Plaintiff shall file the first amended complaint within **five (5) days of the date of**

28         **entry of this order**;

5.    The unknown heirs, devisees, successors in interest, and claimants of the estate of Joe Rodriguez Torres must appear or plead to Plaintiff's first amended complaint within **ninety (90) days of the date of entry of this order**, with service upon Plaintiff's attorney at the following address: LTL Attorneys LLP, 300 S. Grand Ave., 14th Floor, Los Angeles, California 90071.   A failure to answer shall constitute a default and the Court will proceed to the hearing and adjudication of this suit as if the unknown heirs, devisees, successors in interest, and claimants of the estate of Joe Rodriguez Torres have been served with process; and

6.    Plaintiff shall publish this order in a newspaper of general circulation in Kern County and an additional newspaper of national circulation once a week for six consecutive weeks, with the first publication to be made within **fourteen (14) days of the date of entry of this order.**

IT IS SO ORDERED.

Dated:   **November 22, 2021**

UNITED STATES MAGISTRATE JUDGE