# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BALTIMORE LIFE INSURANCE COMPANY, | Case No. 1:21-cv-01001-DAD-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR RELIEF FROM NOVEMBER 22, 2021 ORDER RE: SERVICE BY PUBLICATION AND REQUIRING PLAINTIFF TO FILE DISPOSITIONAL DOCUMENTS |
| v. | |
| EMILY P. TORRES, et al., | |
| Defendants. | (ECF Nos. 14, 21, 23, 24) |
| | **TWENTY-ONE DAY DEADLINE** |

## I.

## INTRODUCTION

Currently before the Court is Plaintiff's motion for relief form the Court's prior order dated November 22, 2021, that granted Plaintiff's motion to allow service on the unknown heirs, devisees, successors in interest, and claimants of the estate of Joe Rodriguez Torres by publication pursuant to 28 U.S.C. § 1655. (ECF No. 14.) The Court held a hearing on the Plaintiff's motion on April 13, 2022. (ECF No. 23.) In light of the proffer of a potential indemnification agreement between the Defendants and Plaintiff, the Court continued the hearing until May 4, 2022, and ordered supplemental briefing to be filed on the subject of the indemnification agreement. (Id.) Upon review of the supplemental briefing, the Court found this matter suitable for decision without oral argument and vacated the May 4, 2022 hearing. (ECF No. 25.)

1

Having considered the moving papers, the declaration and exhibits attached thereto, the arguments presented at the April 13, 2022 hearing, the supplemental briefing filed on April 27, 2022, as well as the Court's file, the Court shall grant Plaintiff's motion for relief and order the parties to submit dispositional documents within twenty-one (21) days.

## II.

## BACKGROUND

### A.    Procedural History

The Baltimore Life Insurance Company ("Plaintiff") filed this interpleader action on June 24, 2021, naming Defendants Emily P. Torres, individually ("Mrs. Torres") and as Trustee for the Torres Revocable Living Trust (the "Trust" and "Mrs. Torres as Trustee"), Joe R. Torres, Jr. ("Joe Jr."), and Jerry R. Torres ("Jerry Torres").  (ECF No. 1.)  On the same date, Plaintiff filed a notice of interested parties.  (ECF No. 2.)  On July 1, 2021, Plaintiff returned executed summons demonstrating these named Defendants had been served on June 28, 2021.  (ECF Nos. 5, 6, 7.) On September 21, 2021, in response to the Court's order requiring a status report concerning the action, Plaintiff filed a notice of action informing the Court of the intent to file a motion for service by publication and amendment, and on September 22, 2021, the Court continued the scheduling conference in this matter and ordered Plaintiff to file the motion for publication and to amend within thirty days.  (ECF Nos. 10, 11, 12.)  On November 22, 2021, the Court granted Plaintiff's motion for leave to amend and to serve by publication.  (ECF No. 14.)  The Court ordered that: "Plaintiff shall publish this order in a newspaper of general circulation in Kern County and an additional newspaper of national circulation once a week for six consecutive weeks, with the first publication to be made within **fourteen (14) days of the date of entry of this order.**"  (ECF No. 14 at 11 (emphasis in original).)

On November 22, 2021, Plaintiff filed a first amended complaint, that names the unknown heirs, devisees, successors in interest, and claimants of the estate of Joe Rodriguez Torres (the "Decedent" or "Mr. Torres").  (ECF No. 15.)

On February 24, 2022, ahead of the March 3, 2022 scheduling conference, Plaintiff filed what was entitled a joint scheduling report.  (ECF No. 17.)  Plaintiff proffered that while it

1  published the November 22, 2021 order in a regional newspaper for the required time period, the

2  prices quoted for publishing the Court's 11-page order in national papers were prohibitively

3  expensive.   Plaintiff stated it was preparing a motion for relief from the prior order, and

4  requested the scheduling conference be continued to the hearing date for the forthcoming motion,

5  which Plaintiff anticipated filing within one week.  (Id.)[1]

6      On March 8, 2022, Plaintiff filed the motion for relief that is currently before the Court.

7  (ECF No. 21.)  The Court held a hearing on the Plaintiff's motion on April 13, 2022, at which

8  counsel David Grimes appeared on behalf of Plaintiff.  (ECF No. 23.)  No appearances were

9  made on behalf of the Defendants.  The Court continued the hearing until May 4, 2022, and

10  ordered supplemental briefing to be filed on the subject of the indemnification agreement.  (Id.)

11  On April 27, 2022, Plaintiff filed a supplemental brief.  (ECF No. 24.)  Along with the Plaintiff's

12  supplemental brief is an attached declaration of counsel Robert H. Brumfield, attorney for

13  Defendants, and Stephen Kaufman, attorney for Plaintiff.   (Decl. Robert H. Brumfield, III

14  ("Brumfield Decl."), ECF No. 24-1; Decl. Stephen H. Kaufman ("Kaufman Decl."), ECF No.

15  24-2.)

16          **B.      Factual Background Concerning Motion for Relief from Publication Order**

17      The Court previously summarized the factual background underlying the previously

18  adjudicated motion for publication, and incorporates that information by way of reference.  (See

19  ECF No. 14 at 2-4.)

20      Following the Court's November 22, 2021 order granting service by publication,

21  Plaintiff's counsel requested quotes for publication costs from the Bakersfield Californian

22  (circulated locally in Kern County) and USA Today (circulated nationally).  (Decl. Caleb H.

23  Liang ("Liang Decl.") ¶ 3, ECF No. 21-2.)  On December 1, 2021, Plaintiff's counsel received a

24

25  [1]  The Court noted it was unclear why Plaintiff waited until the late hour to inform the Court of the inability to
comply with the Court's previous order granting service by publication, and that the prudent action would have been
26  to immediately seek clarification or amendment of the previous order to either allow for publication of only a
section of the order, to propose another truncated form referencing the case and providing necessary information to
27  include in the publication, or other action.  (ECF No. 18.)  The Court stated it would take no position on the
forthcoming motion for relief and continued the scheduling conference for a period of approximately 120 days, and
28  declined to set the scheduling conference on the same date as the hearing on the motion for relief, as there were no
other parties yet appearing in this action and thus the case was not ready for scheduling.  (Id.)

quote of $740.00 to publish the Court's Order once a week for six weeks in the Bakersfield Californian.  (<u>Id.</u> at ¶ 4.)  Plaintiff's counsel confirmed publication on December 2, and the first publication was made on December 6.  (<u>Id.</u> at ¶ 5.)  Plaintiff's counsel did not receive a quote for publication from USA Today until December 8, at which point USA Today quoted Plaintiff $201,000.00 to publish the Court's Order once a week for six weeks.  (<u>Id.</u> at ¶ 6.)

Concerned by the excessive cost to publish the Court's order in USA Today, Plaintiff's counsel began investigating alternative national publications.  Plaintiff's counsel requested quotes from the NY Times, the Los Angeles Times, and the Washington Post.  (<u>Id.</u> at ¶ 7.)  The NY Times quoted Plaintiff $60,637.50 per publication ($363,825.00 total).  (<u>Id.</u> ¶ 8.)  The Los Angeles Times quoted $192,780.00.  (<u>Id.</u> at ¶ 9.)  The Washington Post quoted $24,362.76.  (<u>Id.</u> at ¶ 10.)

As discussed further below in relation to the information contained in the supplemental briefing, counsel for Plaintiff and Defendants subsequently discussed an agreement for Defendants to indemnify Plaintiff against future claims from presently unknown claimants, in the interests of avoiding further costs of publication, to disperse the life insurance funds, and to dismiss this case.

**III.**

**LEGAL STANDARD**

The Court will first provide the legal standards pertaining to motions for relief from a final order, and then the Court will reproduce the legal standards pertaining to service by publication under 28 U.S.C. § 1655 as laid out in the Court's previous order granting publication.

**A.     Motions for Relief Pursuant to Rule 60(b)**

Federal Rule of Civil Procedure 60(b) governs the grounds for relief from a final judgment, order, or proceeding.  As relevant here, Rule 60(b) permits a court to relieve a party from a final order for the following reasons:  "(1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment."  Fed. R. Civ. P. 60(b).  "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date

of the proceeding." Fed. R. Civ. P. 60(c)(1).

Moreover, when filing a motion for reconsideration, Local Rule 230(j) requires a party to show the "new or different facts or circumstances claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."  Motions to reconsider are committed to the discretion of the trial court.  Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983) (en banc).  To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield, 634 F. Supp. 656, 665 (E.D. Cal. 1986).

## B.    Service By Publication Under 28 U.S.C. § 1655

"The federal interpleader statute, 28 U.S.C. § 1335, allows the filing party to remove itself from a dispute over funds owed to two or more claimants when the filing party has no interest in the outcome, other than knowing to whom payment should be made."  Fid. & Guar. Life Ins. Co. v. Freeman, 94 F. Supp. 2d 689, 691 (D. Md. 2000); see also United States v. Swan's Est., 441 F.2d 1082, 1084–86 (5th Cir. 1971) ("A statutory interpleader action instituted under 28 U.S.C. 1335 is an action to determine the validity of competing claims to identified property.  If parties with claims against the property are permitted to exempt those claims from adjudication in an interpleader action by evading personal service, the basic policies underlying interpleader— permitting a stakeholder to avoid multiple liability and a multiplicity of suits— are disserved.").

28 U.S.C. § 1655[2] provides that, in an action to enforce a lien upon or claim to, or to

---

[2]  The statute, entitled "Lien enforcement; absent defendants," provides as follows:

In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.

Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.

If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the

remove an encumbrance, lien, or cloud upon the title to, real or personal property, the district court may order an absent defendant to appear or plead by a certain day.  USAA Inv. Mgmt. Co. v. Dunvegan Tr. U/A 7/6/1976, No. C15-1972-JCC, 2016 WL 8504776, at *1 (W.D. Wash. Apr. 22, 2016); Metro. Life Ins. Co. v. Jackson, No. CV 17-126-BAJ-RLB, 2017 WL 4931695, at *2 (M.D. La. Oct. 31, 2017).  If personal service is not practicable, the absent defendant may be served by publication as the court may direct, not less than once a week for six consecutive weeks.  (Id.)  If the absent defendant does not appear or plead by the deadline set by the court, the court may proceed as if the defendant had been served.  (Id.)  Any adjudication as to that defendant shall affect only the subject property.  (Id.)  The statute also provides that any such defendant, at any time within one year after final judgment, may enter an appearance and set aside the judgment and permit the defendant to plead.  28 U.S.C. § 1655; see also Freeman, 94 F. Supp. 2d at 691–92 ("[N]othing in § 1655 requires appointment of a guardian *ad litem,* and though it may be appropriate in some cases, the Court finds no need for such appointment here. Should Freeman and Shannon wish to contest the Court's judgment once these interpleader actions are complete, they have one year after the judgment to enter their appearance, during which time the Court may set aside the judgment in the interpleader action.").

"Various federal courts have held that where an interpleader action satisfies the requirements of 28 U.S.C. § 1655, constructive service pursuant to that section will give the court jurisdiction over defendants not amenable to personal service."  Freeman, 94 F. Supp. 2d at 691–92 (citations omitted) (citing Swan's Est., 441 F.2d at 1085 ("Where, as here, the property is located within the district in which the District Court sits, the action may also fall within that class of actions defined by Section 1655. We believe that Congress did not intend to exclude from coverage under Section 1655 actions such as this one, in which the stake consists of the

property which is the subject of the action. When a part of the property is within another district, but within the same state, such action may be brought in either district.

Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to plead on payment of such costs as the court deems just.

28 U.S.C. § 1655.

1  assets of an estate on deposit in a bank pursuant to court order, the claims are numerous, and

2  service by publication constitutes a reasonable mode of conveying notice to an absent party.”);

3  Bache Halsey Stuart Shields, Inc. v. Garmaise, 519 F.Supp. 682, 686 (S.D.N.Y. 1981)); see also

4  USAA Inv. Mgmt. Co., 2016 WL 8504776, at *1 (“Although interpleader actions are not

5  specifically named in § 1655, many courts have applied the statute in such cases.”) (citations

6  omitted); Krishna v. Colgate Palmolive Co., No. 90 CIV. 4116 (CSH), 1991 WL 125186, at *3

7  (S.D.N.Y. July 2, 1991) (“Relatively few courts have considered the application of § 1655 to

8  personal jurisdiction in interpleader actions.  However, those which have addressed that issue

9  have held that where the requirements of § 1655 are satisfied in an interpleader action,

10 constructive service of process pursuant to that section grants personal jurisdiction over

11 claimants not otherwise available for personal service.”).

12                                              **IV.**

13                                        **DISCUSSION**

14        Plaintiff seeks relief from publishing the Court’s November 22, 2021 order requiring

15 publication of the order nationally.

16        **A.      The Initially Filed Motion for Relief**

17        Plaintiff argues that in addition to the authority under Federal Rule of Civil Procedure

18 60(b), this Court retains inherent power to reconsider, rescind, or modify an interlocutory order

19 for sufficient cause.  See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d

20 882, 885 (9th Cir. 2001) (“The general rule regarding the power of a district court to rescind an

21 interlocutory order is as follows: ‘As long as a district court has jurisdiction over the case, then it

22 possesses the inherent procedural power to reconsider, *rescind,* or modify an interlocutory order

23 for cause seen by it to be sufficient . . . a district court’s authority to rescind an interlocutory

24 order over which it has jurisdiction is an inherent power rooted firmly in the common law and is

25 not abridged by the Federal Rules of Civil Procedure.”) (internal quotation and citation omitted).

26 Plaintiff submits that the “unforeseen astronomical cost associated with publishing the Court’s

27 11-page Order in a national newspaper warrants granting Plaintiff relief from that Order.”

28 (Mem. 6.)  Plaintiff states that when it originally filed the motion for service by publication, it

did not anticipate that national publication would potentially cost more than the amount of actual policy benefit in question.  Plaintiff states that it takes full responsibility for requesting in its original motion that the Court order publication in a national newspaper as well as a regional newspaper.  However, Plaintiff proffers it did not anticipate that such a publication would require publishing an 11-page order, and that by comparison, the order issued by the Western District of Washington in Primerica Life Insurance Co. (cited by Plaintiff's motion and the Court's Order) was only two pages.

The Court notes that while the order in the case cited by Plaintiff in the original motion may have ultimately had a shorter order and analysis, this Court reviewed and analyzed Plaintiff's motion as presented, and Plaintiff clearly could have, and should have presented this issue to the Court at an earlier time following the granting of the original motion.  This is not the first time in this case that the Court found it necessary to trigger action from Plaintiff.  (See ECF Nos. 10, 11, 12.)

However, Plaintiff emphasizes that the action here only includes a total policy benefit of $201,482.00, and therefore it would not be reasonable to spend tens or hundreds of thousands of dollars on service of unknown claimants.  Plaintiff submits this is particularly true given costs associated with "obtaining service of process on the claimants to the fund" is a "compensable expense," that may be payable from the interpleaded fund, and "there because the attorneys' fees are paid from the interpleaded fund itself, there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it."  Trustees of Directors Guild of Am.-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 427 (9th Cir.), opinion amended on denial of reh'g, 255 F.3d 661 (9th Cir. 2000).  Plaintiff states that while it originally "perhaps overzealously" requested national publication, Plaintiff submits now that regional publication should be sufficient to effect service here as all of the known claimants reside in Kern County, California; and Plaintiff has no reason to believe any unknown claimants may reside in any other states.  Additionally, Plaintiff proffers that counsel for the known claimants has also agreed that nationwide publication seems excessive and agrees that publication in the Bakersfield Californian should be sufficient.  (Mem. 5; Liang Decl. ¶ 11,

1   Ex. A.)

2          **B.      Supplemental Briefing on the Issue of Indemnification**

3          At the initial hearing held on April 13, 2022, Plaintiff proffered the parties were

4   agreeable to entering into an indemnification agreement and dismissing this action without

5   completing service on unknown claimants.  (ECF No. 23.) The Court notes that while the

6   potential indemnification agreement was not mentioned in the body of the Plaintiff's motion, it

7   was already tentatively agreed to as demonstrated by the exhibits attached to Plaintiff's initially

8   filed motion for relief.[3]

9          Along with the supplemental brief, counsel for Plaintiff and Defendants provided

10  declarations.  Defendants' counsel states that in relation to this action, he has been asked to state

11  the names and location of all claimants regarding the life insurance policy in issue; that he met

12  the represented Defendants when assisting with the trust administration of the Trust after the

13  passing away of the Decedent, in assisting with a variety of business matters for the family-

14  owned business started by the decedent, and was Jerry R. Torres' attorney regarding recent

15  preparation of his estate planning documents.  (Brumfield Decl. ¶¶ 3, 6.)  Defendants' counsel

16  proffers that Mrs. Torres was the long-time spouse of the Decedent, they were married over 60

17  years, and Joe R. Torres Jr. and Jerry R. Torres are the only two children of the Decedent and

18

19  _____

    [3]  Specifically, David Crane, an attorney for Plaintiff, wrote in part on December 29, 2021, to counsel for the known
20  claimants, stating:

21          I also wanted to touch base with you regarding Baltimore Life Insurance's efforts to serve the
            unknown heirs, etc., via publication. Since the Court's order on our motion, we have begun
22          weekly publication in the Bakersfield Californian. However, the quotes we have received from the
            various national publications we have contacted are all quite expensive, ranging from the high tens
23          of thousands to hundreds of thousands of dollars. We are concerned about incurring such a large
            service cost, especially since publication costs may ultimately be deducted from the annuity.
24          Given this high cost, we are considering asking the Court to revise the order to either eliminate the
            need for national publication altogether, or alternatively, to shorten the time frame for a national
25          publication. Is this something your clients are willing to consent to? Please also let us know
            whether your clients would be amenable to agreeing to indemnify Baltimore Life in the event the
26          Court grants our request and any other claimants from outside of California subsequently file a
            claim to the policy benefits.

27  (ECF No. 21-2 at 6.)  On the same date, counsel for the Defendants, Robert H. Brumfield, III, replied: "Nationwide
    service seems absurd.  Indemnification is fine as there is zero risk of the claims.  I would request that the Bakersfield
28  Californian be deemed sufficient."  (ECF No. 21-2 at 5.)  The Court expects counsel to be better prepared to discuss
    all pertinent facts on the day of a hearing.

1   Mrs. Torres.  (Brumfield Dec. ¶ 7.)  They did not have any other children from the marriage, and

2   did not adopt other children.  (Id.)  The Decedent and Mrs. Torres established the Trust on

3   December 9, 1996, which named co-trustees Joe R. Torres and Emily P. Torres, and thus since

4   the passing of the Decedent, Mrs. Torres is the sole trustee.  (Id. at ¶ 8.)  The Torres Revocable

5   Living Trust is the recipient of all assets, named or unnamed, via Mr. Torres' pour-over wills.

6   (Id. at ¶ 9.)

7           Defendants' counsel further proffers that for the reasons described in the complaint for

8   interpleader filed in this action, the ownership of the policy was never properly effectuated from

9   Washington Trust Bank to Mrs. Torres and Joe Rodriguez Torres individually, and therefore,

10  there is no owner of the policy and no beneficiary, and the last known beneficiary is a non-

11  existent trust.[4]  (Id. at ¶ 10.)  Finally, counsel submits that the Defendants all live in Bakersfield,

12  California, and are readily available and accessible to me and my office; that there are no known

13  claimants known to counsel other than these Defendants; and that under the terms of the

14  agreement between these Defendants and the Plaintiff Intervenor in this action, upon the Court's

15  granting of the motion for relief from the order, the Baltimore Life Insurance Company will pay

16  the proceeds of the Policy to Emily P. Torres, Trustee of the Torres Revocable Living Trust; that

17  the Trust and Emily P. Torres, individually, will indemnify the Baltimore Life Insurance

18  Company for any claims by any later-discovered claimants to the Policy; and the Baltimore Life

19  Insurance Company will then dismiss this action.  (Brumfield Decl. ¶ 17.)

20          Counsel for Plaintiff declares that Plaintiff and all Defendants, have agreed to settle this

21  action upon the following terms which will be memorialized in a written agreement: upon the

22  Court granting the motion for relief, with the agreement of all Defendants, Plaintiff will pay the

23  proceeds of the Policy to Emily P. Torres, Trustee of the Torres Revocable Living Trust, and in

24  return, the Trust and Emily P. Torres as an individual, will jointly and severally indemnify and

25  hold harmless Plaintiff from and against any claims related to the Policy by any person not

26  already a party to this case, including reasonable attorneys' fees related to such claims, and

27  ─────────────────
    [4]  The "non-existent" trust refers to a trust for the benefit of J. Torres Co., Inc., a corporation owned by the Decedent
28  and Mrs. Torres, as explained in the first amended complaint and summarized in the Court's previous order.  (See
    ECF Nos. 14 at 2-3; 15 at 3.)

1   Plaintiff will then dismiss this action.  (Kaufman Decl. ¶ 3.)  Plaintiff has reviewed the Trust

2   documents and a list of Trust assets provided by Defendants' counsel and is satisfied that the

3   Trust and Mrs. Torres have sufficient assets to support the promised indemnification.

4          **C.      The Court Shall Grant Plaintiff's Motion and Order Dispositional**
             **Documents**
5

6          Based on the totality of the circumstances regarding this action, including the background

7   of the Trust and the family, and the fact that the counsel for the current appearing known

8   claimants, Defendants Emily P. Torres, individually and as Trustee for the Torres Revocable

9   Living Trust, Joe R. Torres, Jr., and Jerry R. Torres, has submitted a declaration attesting to a

10  reasonable belief that all potentially known claimants reside in Bakersfield, California, and that

11  there is an agreement providing for Mrs. Torres and the Trust to indemnify Plaintiff against

12  claims from unknown claimants, the Court finds good cause to grant the Plaintiff's motion for

13  relief from the national publication requirement of the Court's November 22, 2021 order.  Fed.

14  R. Civ. P. 60(b); 28 U.S.C. § 1655.  Based on the parties' proffer that after the completion of an

15  indemnification  agreement,  Plaintiff  will  dismiss  this  case,  the  Court  shall  also  order

16  dispositional documents to be filed within twenty-one (21) days.[5]

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  _____

28  [5] Pursuant to Local Rule, the Court is required to fix a date for dispositional documents to be filed within twenty-one (21) days, absent good cause shown to extend such time.  L.R. 160(b).

**V.**

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for relief from order pursuant to Federal Rule of Civil Procedure 60 (ECF No. 21) is GRANTED;

2.  Plaintiff is relieved from the national publication requirement of the Court's November 22, 2021 order (ECF No. 14);

3.  All pending matters and dates are VACATED; and

4.  Plaintiff shall file dispositional documents within twenty-one (21) days of entry of this order.

IT IS SO ORDERED.

Dated:   **May 4, 2022**

UNITED STATES MAGISTRATE JUDGE

12